STATE OF MISSOURI, Respondent, v. MARY E. WHITE, Appellant.

St. Louis Court of Appeals, December 3, 1912.

1. CRIMINAL SLANDER: Gist of Action: Intent. The gist of the action of criminal slander is the intention of the defendant in uttering the words.

2. ———: Accusing Female of Adultery: Intent: Instructions. In order to constitute an offense under Sec. 4817, R. S. 1909, providing that every person falsely or maliciously charging or accusing any female of adultery or whoredom, by falsely speaking concerning her in the presence of others any false words imputing any such offense, shall be guilty of a misdemeanor, the words spoken must impute lack of chastity, and if it appears from the circumstances under which they were uttered that they were not intended or to be understood as imputing lack of chastity, but were intended and to be understood as terms

of abuse or vituperation, the uttering of them does not constitute the offense; and hence, in a prosecution under this section, where the evidence tended strongly to show that the words uttered by defendant were used as terms of abuse, it was reversible error to refuse an instruction requested by defendant which declared the law as above set out.

Appeal from Mississippi Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*Gresham & Moore* for appellant.

The court erred in refusing instruction numbered one offered by the defendant. The gist of a slander case is the intention of the defendant in uttering the words. The very essence of the offense is speaking false and slanderous words impugning the female's character. Instruction number one given by the court on its own motion, unaccompanied by any explanation of malice and intent falls short of the whole law and is reversible error. State v. Boos, 66 Mo. App. 539; State v. Collins, 117 Mo. App. 58.

*J. M. Haw*, Prosecuting Attorney, and *George H. Traylor* for respondent.

The cases cited by appellant to sustain her third contention, that instruction numbered one offered by the defendant should have been given, are not applicable. Neither of them sustains her contention. In this case there was a total lack of any testimony on which to base such an instruction. There was no defense or testimony offered by appellant to show that the words used were mere ejaculations of anger and were not intended by her to be understood in their usual and natural sense, or that they were used as terms of reproach. The defense was that the words were not used. The mere use of the words charged to defendant constituted slander by express statutory enactment (R.

S. 1909, secs. 4817 and 5424; State v. Santhuff, 131 Mo. App. 620), and it devolved upon defendant to show that they were true or were spoken innocently (Israel v. Israel, 109 Mo. App. 366); and having attempted to do neither defendant was not entitled to the instruction mentioned. State v. Gartrell, 171 Mo. 489. Instruction numbered one, given by the court on its own motion, covered all of the elements of the offense and was sufficient.

CAULFIELD, J.—The defendant appeals from a conviction and fine of $500 under section 4817 of the Revised Statutes of Missouri, 1909, which provides that, ''every person who shall falsely and maliciously charge or accuse any female of . . . adultery or whoredom, by falsely speaking of and concerning such female, in the presence and hearing of any other person or persons, any false and slanderous words which shall impute to her any such offense, . . . shall be deemed guilty of a misdemeanor.''

The evidence tended to prove that the defendant and Mrs. Walker occupied adjoining farms and on several occasions the latter's cattle had gotten into defendant's wheat field. On the last one, defendant's father and hired man undertook to put the trespassing cattle into defendant's lot near her house. Mrs. Walker with her little ten-year-old girl arrived on the scene about the time the men were driving the cattle into defendant's back lot. This back lot had three gates, one from the field, another into another lot called the front lot, and another out into the public road. Mrs. Walker stood at the gateway leading into the road and asked defendant's father to turn the cattle out and let her take them home. This he refused to do, and proceeded to drive them on through the back lot into the front lot. About this time Mrs. Traylor, the other prosecuting witness, came along with her little girl, and ascertaining the trouble, advised Mrs. Walker to

go in and get her cattle. Both the women and Mrs. Walker's little girl then went into the defendant's back lot, and Mrs. Walker opened the gate leading into the defendant's front lot where the cattle were. Then Mrs. Walker and her little girl went into the front lot and commenced to drive the cattle out, while Mrs. Traylor stood at the gate.

Mrs. Walker's version, on direct examination, of what happened about this time is as follows: "A. Mrs. White said, 'Don't open that gate.' I said, 'All right, come on, Sarah, we will let them alone.' Q. Sarah, who is that? A. My girl; so Sarah started, and Mrs. White came running to the door—came running out of the door, saying, 'Don't open that gate; don't you open that gate; I will shoot you; I will set my dogs on you, you dirty, whoring—' Q. State the very words. A. 'You dirty, whoring bitches you; I will shoot you; I will set my dogs on you.' Hair flying, and she came running towards us, she stooped on her right side and pulled up her clothes something near her knee and pulled a pistol from her clothes, and came running, and when she put her hand to the gate is when I saw it was a pistol; and I was waiting for my girl to come out and get in front of me before I started. She said, 'Get out of here'. I said, 'All right, Mrs. White.' My girl runs crying, saying 'Run, mamma—' Judge O'Bryan: Object to her telling about what the girl did. A. She said, 'Yes, sir, you get, run.' I said, 'Mrs. White, give me time, I am going,' and she said, 'Get' and was hissing the dog, calling us bad names every few words she spoke, saying, 'You dirty whoring bitches.' She said she would shoot the hair off of our head. She would call us 'You dirty, whoring bitches.' "

On cross-examination she said that defendant had called her and Mrs. Traylor "whoring bitches" as many as seven or eight times; that defendant talked so fast witness could not say how many times; that wit-

ness was badly frightened; that defendant said, pointing her finger, "I mean you, Mrs. Walker and Mrs. Traylor, both of you" and also said that the Walkers, Foresters and Traylors had been running over her. That defendant talked and fussed so much that witness could not tell all she said. Mrs. Traylor added that defendant also called them "dirty, low-down dogs" and said that the Forresters and Traylors "had run over her, and now the Traylors and Walkers were trying to run over her, but they couldn't do it."

We think the foregoing is fairly indicative of the circumstances and manner in which the alleged slander occurred according to the State's theory. Mrs. Walker was corroborated by Mrs. Traylor and the two little girls.

The defendant and her hired man, Ben Chandler, the latter by deposition, testified in her behalf as to the particular incident in question. Their testimony tended to prove that the defendant did not have a pistol or urge the dog on the two women and children and did not use the language attributed to her. According to Chandler, "Mrs. White said, 'get out of the lot and let the cattle alone.' Mrs. Walker made the remark that she was going to take the cattle. Mrs. White told her she wouldn't get them and said, 'get out of the lot and stay out.' Mrs. Walker said, 'all right, Mrs. White,' and she went out; and Mrs. White said, 'you had better be at home tending to your own business and cleaning up your filthy house instead of being up here trying to attend to mine;' and they went off." The defendant's testimony is to much the same effect.

There was also considerable uncontradicted testimony to the effect that four or five years before defendant had suffered such a serious mental derangement as to necessitate her removal to the State insane asylum. A physcian testified that her mental derangement was of the periodical type—that is, was liable to recur from time to time.

The defendant was refused an instruction to the effect that ''if the jury from the evidence and circumstances in evidence, believe that the words spoken by the defendant were uttered by her in anger, as terms of abuse and reproach to the said Susie Walker and Sadie Traylor and was not intended as the truth, and was understood by the hearers as being mere terms of abuse and uttered in anger, and not intended to charge them with whoredom, then the jury should find for the defendant.'' In our opinion such instruction should have been given. In cases of criminal slander, the gist of the action is the intention of the defendant in uttering the words. [State v. Boos, 66 Mo. App. 537]. The words used must have imputed lack of chastity to the woman or women mentioned. [State v. Collins, 117 Mo. App. 658, 94 S. W. 325.] If it is apparent from the circumstances under which the words were uttered that they were not intended or to be understood as imputing such lack of chastity, but were intended and to be understood only as mere terms of abuse or vituperation, then the uttering of them does not constitute criminal slander. [See Bridgman v. Armer, 57 Mo. App. 528.] Though we are not quite prepared to say that the evidence on the part of the State showed conclusively that the words complained of were used as mere terms of abuse and not to impute lack of chastity, it had, to say the least, a strong tendency in that direction and amply justified the giving of the instruction asked.

The judgment is reversed and the cause remanded. *Reynolds P. J.*, and *Nortoni, J.*, concur.